**[J-100-2014]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, STEVENS, JJ.**


| | |
|---|---|
| CHARLES H. CHAMBERLAIN, | : No. 76 MAP 2014 |
| | : |
| Appellee | : Appeal from the order of the |
| | : Commonwealth Court dated January 3, |
| | : 2014 at No. 604 CD 2013 Reversing the |
| v. | : decision of the Unemployment |
| | : Compensation Board of Review dated |
| | : March 13, 2013 at Appeal No. |
| UNEMPLOYMENT COMPENSATION | : B-EUC-12-09-F-B648-A, Decision No. |
| BOARD OF REVIEW, | : B-549177. |
| | : |
| Appellant | : ARGUED:  November 18, 2014 |


**OPINION**


**MR. JUSTICE BAER**                                        **DECIDED:   April 27, 2015**

This appeal presents the issue of whether a claimant sentenced to house arrest is "incarcerated" for purposes of Section 402.6 of the Unemployment Compensation Law (UC Law),[1] and, thus, is disqualified from receiving unemployment compensation benefits.   Mindful of the remedial purpose of the UC Law, the Commonwealth Court held that a claimant sentenced to house arrest is not "incarcerated" under Section 402.6. Because the terms and conditions of the claimant's house arrest did not otherwise prevent him from satisfying the statutory requirements for obtaining unemployment compensation benefits, the Commonwealth Court reversed the denial of benefits.   For the reasons set forth herein, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, added by the Act of October 30, 1996, P.L. 738, *as amended*, 43 P.S. § 802.6.

For ease of discussion, we begin by examining the pertinent provisions of the UC Law. Significantly, Section 401 sets forth the "[q]ualifications required to secure compensation." 43 P.S. § 801. Section 401(d) mandates that the claimant "[i]s able to work and available for suitable work." Id. § 801(d)(1).[2] Further, Section 401 lists additional qualifications including, *inter alia*, the receipt of wages for employment for an enumerated period, participation in an active search for suitable employment, and submission of a valid application for benefits after having been unemployed for one week. Id. § 801.

Section 402.6 (Ineligibility of incarcerated employe) disqualifies a claimant from receiving benefits and provides:

> An employe shall not be eligible for payment of unemployment compensation benefits for any weeks of unemployment during which the employe is incarcerated after a conviction.

Id., § 802.6.[3]

Here, the record establishes that in July of 2012, Charles H. Chamberlain (Claimant) was unemployed and was receiving unemployment compensation benefits.

---

[2] This Section states:

§ 801. Qualifications required to secure compensation

Compensation shall be payable to any employe who is or becomes unemployed, and who --

\*                              \*                              \*

(d)(1) Is able to work and available for suitable work. . . .

43 P.S. § 801(d)(1). In this opinion, we refer to this section by both its statutory designation and as the "able and available for work standard."

[3] Section 402 of the UC Law, 43 P.S. § 802, also sets forth ineligibility provisions, which are not at issue here.

On October 2, 2012, he pled guilty in Magisterial District Court to the summary offenses of operating a vehicle without a valid inspection, and driving with a suspended license. Relating to the latter conviction, Claimant was sentenced to sixty days in the Keystone House Arrest Program (from November 1, 2012 to December 31, 2012) with the condition that if he failed to comply, he would serve sixty days in the York County Prison. Claimant was also required to attend reemployment eligibility assessment classes via CareerLink. The terms of Claimant's house arrest restricted him to the home of his sister, but permitted him to work, run errands, and Christmas shop.

On November 28, 2012, as relevant herein, the local service center of the Office of Unemployment Compensation Benefits issued a notice of determination that Claimant's sentence of house arrest disqualified him from receipt of benefits because he was "incarcerated after a conviction" under Section 402.6. Claimant appealed the finding of disqualification and, on January 14, 2013, a hearing was held before a referee for the Unemployment Compensation Board of Review (UCBR). At the hearing, testimony was presented from Judy Will, an investigator for the Internal Audit Division of the Pennsylvania Department of Labor and Industry (Department), and Claimant. Will testified that the Department interpreted Section 402.6 as disqualifying a claimant who has been convicted of a crime and incarcerated, regardless of whether the claimant was under house arrest, in a halfway house, or any other place "in lieu of" prison.

Claimant testified that during his house arrest, he spent no time in prison or any other state correctional institution, but rather lived at his sister's residence, and had permission to work, run errands, and shop for Christmas. Indeed, he stated that he actually worked nine of the sixty days while on house arrest, and reported his work to the local service center. Claimant emphasized that he was sentenced to intermediate punishment through a county program in lieu of incarceration, and relied upon provisions

of the Sentencing Code, Sections 9721 (sentencing generally) and Section 9763 (sentence of county intermediate punishment), 42 Pa.C.S. §§ 9721 and 9763, which define a sentence of county intermediate punishment as an alternative to a sentence of total or partial confinement in a correctional institution, and set forth various conditions a court may attach to a sentence of county intermediate punishment.[4]

By decision and order dated January 15, 2013, the referee concluded that Claimant was disqualified from receiving benefits during the period he was on house

---

[4] Section 9721 states, in relevant part:

(a) General rule. --In determining the sentence to be imposed the court shall, except as provided in subsection (a.1) [relating to mandatory minimum sentences], consider and select one or more of the following alternatives, and may impose them consecutively or concurrently:
  (1) An order of probation.
  (2) A determination of guilt without further penalty.
  (3) Partial confinement.
  (4) Total confinement.
  (5) A fine.
  (6) County intermediate punishment.
  (7) State intermediate punishment.

42 Pa.C.S. § 9721(a).

Section 9763 provides that in imposing a sentence of county intermediate punishment, the court shall specify the term, which may not exceed the maximum term for which the defendant could be confined, and the program to which the defendant is sentenced. 42 Pa.C.S. § 9763(a). Section 9763 further lists conditions which the court may attach to the defendant's intermediate punishment sentence including, *inter alia*, to be devoted to a specific occupation or employment; to participate in a community service program; to undergo counseling or available medical or psychiatric treatment; to attend educational or vocational training programs; to reside in a rehabilitative facility; to not possess a firearm without written permission; to make restitution; to pay a fine; to participate in drug or alcohol treatment programs; to remain within the premises of the defendant's residence during the hours designated by the court; and to be subject to electronic monitoring. Id. § 9763(b).

arrest. Citing no authority for the proposition, the referee interpreted Section 402.6 as rendering a claimant ineligible to receive unemployment compensation benefits whenever he is convicted of a crime and "incarcerated," regardless of where the claimant serves his "incarceration."[5]

Claimant filed a timely appeal with the UCBR, claiming that the referee misapplied the law and that the referee's decision was not supported by the record. The UCBR affirmed the referee's decision, adopting its findings and conclusion of law that Claimant was disqualified from receiving benefits under Section 402.6.

Claimant thereafter appealed to the Commonwealth Court, reiterating his claim that house arrest does not constitute "incarceration" for purposes of Section 402.6 of the UC Law. Emphasizing that the UC Law was intended to be remedial in nature and liberally construed, Claimant argued that the plain meaning of "incarcerated" simply does not encompass living at home. Moreover, he again relied upon the aforementioned provisions of the Sentencing Code, which provide for various sentencing alternatives and categorize a sentence of house arrest differently from a sentence of confinement in prison.

Finally, Claimant analogized the term "incarcerated" in Section 402.6 of the UC Law to the term "imprisonment" in former Section 3731 of the Vehicle Code, 75 Pa.C.S. § 3731(e) (repealed), which this Court had previously interpreted as not being equivalent to house arrest for purposes of determining parole eligibility. See Commonwealth v. Kriston, 588 A.2d 898, 899 (Pa. 1991) (holding that "it would grossly distort the language

---

[5] The referee additionally assessed a five-week fraud overpayment of unemployment benefits in the amount of $1,719 based on Claimant's purported failure to disclose to the local service center that he was incarcerated. The UCBR, however, ultimately reversed the assessment of penalty, concluding that Claimant did not make any intentional misstatement, but rather did not believe that living in his sister's home constituted "incarceration." The fraud issue was not appealed, and is no longer in this case.

used by the legislature if we were to conclude that the term 'imprisonment' means merely 'staying at home.' The plain and ordinary meaning of imprisonment is confinement in a correctional or similar rehabilitative institution, not staying at home.") (emphasis omitted).

In response, the UCBR argued that the phrase "incarcerated after a conviction" in Section 402.6 of the UC Law should be construed in the same manner as that phrase has been interpreted in cases involving nearly identical language in the disqualification provision for incarcerated claimants under Section 306(a.1) of the Workers' Compensation Act (WC Act), *i.e.*, to encompass a sentence of house arrest.[6] See Moore v. Workers' Compensation Appeal Board (Babcock & Wilcox Co.), 811 A.2d 631, 634 (Pa. Cmwlth. 2002) (holding that a claimant sentenced to house arrest with work release is "incarcerated after a conviction" and is disqualified from receiving workers' compensation benefits under Section 306(a.1) of the WC Act because a claimant on house arrest is in the constructive custody of the Commonwealth, his liberty is significantly limited by security measures, and unauthorized departures may result in criminal sanctions).

The UCBR asserted that other workers' compensation cases have held that "incarceration after a conviction" encompasses more than imprisonment in a correctional facility. See Henkels & McCoy, Inc. v. Workers' Compensation Appeal Board (Henrie), 776 A.2d 951, 955 (Pa. 2001) (holding that a claimant who was sentenced to five years' probation with the condition of involuntarily commitment in a psychiatric facility was "incarcerated" for purposes of the WC Act because the prisoner remained confined in the constructive custody of the Commonwealth and was removed from the workforce as a result of his criminal sentence); Brinker's International, Inc. v. Workers' Compensation

---

[6] Section 306(a.1) of the WC Act provides that "[n]othing in this act shall require payment of compensation . . . for any period during which the employe is incarcerated after a conviction. . ." 77 P.S. § 511.1.

Appeal Board (Weissenstein), 721 A.2d 406, 410 (Pa. Cmwlth. 1998) (holding that "incarcerated" in Section 306(a)(2) of the WC Act should not be construed to mean only confinement in jail, but also encompasses a defendant incarcerated at a detention and alcohol recovery facility who is eligible for work release).

The Commonwealth Court reversed the UCBR's determination that house arrest was equivalent to "incarceration" for purposes of Section 402.6 of the UC Law, and concluded that Claimant was entitled to unemployment compensation benefits. Chamberlain v. Unemployment Comp. Bd. of Review, 83 A.3d 283 (Pa. Cmwlth. 2014). The court emphasized that the UC Law was intended to be remedial in nature and protect workers who had suffered a loss of income due to separation from employment through no fault of their own. Id. at 292 (citing Section 3 of the UC Law (declaration of public policy), 43 P.S. § 752; Preservation Pennsylvania v. Unemployment Comp. Bd. of Review, 673 A.2d 1044 (Pa. Cmwlth. 1996)).

The Commonwealth Court distinguished the cases relied upon by the UCBR, which were governed by the WC Act. It emphasized the different purposes underlying the two statutes -- that under the WC Act, a claimant is entitled to compensation for a loss of earning power that is caused by a work injury; while under the UC Law, a claimant is generally provided economic security when he is unemployed through no fault of his own and is able and available for work. Chamberlain, 83 A.2d at 292.

The court found it noteworthy that, unlike in Moore, where the Commonwealth Court ruled that a claimant sentenced to house arrest with work release was ineligible for workers' compensation benefits because he was "incarcerated" under Section 306(a)(2) of the WC Act, the terms of Claimant's house arrest placed no restrictions on his ability to work. Id. Thus, it concluded, the rationale employed by the Commonwealth Court in Moore and by this Court Henkels & McCoy, Inc., i.e., that the General Assembly intended

to preclude the payment of workers' compensation benefits to claimants who have been removed from the work force, is not applicable here where Claimant was available for work while on house arrest. The court further noted that it would contravene the remedial purpose of the Act to interpret "incarcerated" as encompassing house arrest when this Court in Kriston held that house arrest is not equivalent to incarceration for purposes of sentence credit. Id.

Significantly, the Commonwealth Court clarified that it was not holding that an individual sentenced to house arrest is eligible for unemployment benefits as a matter of law. Rather, it held only that "house arrest is not 'incarceration' that renders a claimant ineligible for unemployment compensation under [S]ection 402.6 of the [UC] Law." Id. at 292-93 (footnote omitted). The court recognized that a claimant under house arrest may be subject to conditions that disqualify him from benefits under other provisions of the UC Law, but reiterated that the terms of Claimant's house arrest did not impact his ability to go to work. Id. at 293 n.11. Under the facts presented, the court concluded there was no evidence refuting Claimant's assertions that he was genuinely attached to the labor market. Id. at 293. It stated, "although the Department bore the burden of proof in the proceeding, Claimant was the only party to present evidence concerning the circumstances of his house arrest, and his unrebutted testimony and documentary evidence lend no support to the Department's position." Id.

This Court granted the UCBR's petition for allowance of appeal to address whether the Commonwealth Court erred by holding that Section 402.6 of the UC Law did not disqualify Claimant from receiving unemployment compensation benefits during the period he served his sentence of house arrest. The UCBR, as Appellant, contends that the Commonwealth Court's holding that house arrest is not "incarceration" for purposes of Section 402.6's automatic disqualification provision deviates from appellate court

precedent, which defines "incarceration" expansively to include house arrest. Moore, supra (holding that a claimant sentenced to house arrest with work release is "incarcerated after a conviction" and ineligible for benefits under Section 306(a.1) of the WC Act).

As below, it further contends that the Commonwealth Court's holding is contrary to cases acknowledging that "incarceration" encompasses sentences in addition to those involving confinement in a correctional facility. See Henkels & McCoy, Inc., supra (holding that a claimant who was sentenced to five years' probation with the condition of involuntarily commitment in a psychiatric facility was "incarcerated" for purposes of the WC Act because the prisoner remains confined in the constructive custody of the Commonwealth); Brinker's International, Inc., supra (holding that "incarcerated" in the disqualification provision of the WC Act should not be construed to mean only confinement in jail, but also encompasses a defendant incarcerated at a detention and alcohol facility who is eligible for work release).

Additionally, the UCBR asserts that the Commonwealth Court's holding is inconsistent with precedent that interprets interchangeably the incarcerated employee disqualification provisions of the UC Law and the WC Act. See Kroh v. Unemployment Comp. Bd. of Review, 711 A.2d 1093, 1094 n.4 (Pa. Cmwlth. 1998) (in rejecting an equal protection challenge to Section 402.6 of the UC Law based on the disparate treatment of claimants who had been convicted of crimes, the Commonwealth Court acknowledged that Section 306(a)(2) of the WC Act removed all doubt concerning the disqualifying effect that incarceration has on the entitlement to workers' compensation benefits).

The Commonwealth Court erred in the instant case, the UCBR submits, by concluding that the enumerated workers' compensation cases were inapplicable based on distinctions between the WC Act and the UC Law. It maintains that any discrepancy

between the two statutory schemes is illusory for purposes of this case because both statutes: (1) set forth eligibility requirements for the receipt of public benefits; (2) provide, in very similar language, that incarcerated individuals are disqualified from receiving benefits; and (3) have been applied consistently by appellate courts. Thus, the UCBR contends, there is no distinction warranting disparate treatment between a workers' compensation case and an unemployment compensation case for purposes of determining whether house arrest constitutes "incarceration." It acknowledges that house arrest is an alternative sentence to confinement in prison pursuant to the Sentencing Code, but submits that such distinction is not dispositive of whether house arrest should be considered "incarceration" under Section 402.6 of the UC Law.

The UCBR also refutes the Commonwealth Court's findings that this case is unlike Moore because the terms of Claimant's house arrest did not impact his ability to go to work and because Claimant was genuinely attached to the labor market while on house arrest. According to the UCBR, these findings are erroneous as Claimant was subjected to virtually the same level of confinement as the claimant in Moore in that he received prior permission to leave the house for work purposes, and would have been imprisoned had he violated the terms of his house arrest.

The UCBR challenges the Commonwealth Court's mere consideration of a claimant's "ability to work" to conclude that he is not "incarcerated," positing that such construction would render Section 402.6 meaningless because the "able and available for work" standard was the governing law for incarcerated claimants in Section 401(d)(1) of the UC law before Section 402.6 was adopted, and the Legislature enacted Section 402.6 to remedy the "mischief" resulting from previous case law permitting an incarcerated person on work release to obtain unemployment compensation benefits. See Greer v. Unemployment Comp. Bd. of Review, 392 A.2d 918, 920 (Pa. Cmwlth. 1978) (holding in a

pre-Section 402.6 case that a prisoner on work release could, under certain circumstances, be eligible for UC benefits under Section 401(d)(1) if a factual inquiry showed that he was both available for work and attached to the labor market while incarcerated).

In support of this contention, the UCBR relies on a comment made by the proponent of Section 402.6, Representative William Lloyd, stating:

> I learned to my surprise . . . that it is possible now, if you are convicted and you are in prison and you qualify for work release and your employer does not want you back, you then get unemployment compensation. The businessman in my district and the employees in that company do not think that is right; I do not think that is right either, and I think we ought to change the law.

Statement of Representative William Lloyd, 1996 Pa. Legis. Journal, House, p. 835 (May 13, 1996).

The UCBR interprets the legislative commentary as demonstrating that Section 402.6 was enacted to deny unemployment compensation benefits to any claimant who, although "able and available" for work, is nonetheless serving a sentence of confinement after conviction. The UCBR emphasizes that even though Claimant may have been capable of seeking work and leaving the home to earn wages, he nonetheless was serving a criminal sentence that entailed restrictions, and his violation of those restrictions would have resulted in incarceration in the county prison. It concludes that under the Commonwealth Court's interpretation, Section 402.6 would have no real significance other than to duplicate the "able and available" analysis of Section 401(d)(1).

Finally, the UCBR argues that the Commonwealth Court relied inappropriately on this Court's decision in Kriston, supra, where we held that time spent in an electronic home monitoring program is not "imprisonment" for purposes of crediting a mandatory minimum sentence of imprisonment for driving under the influence of alcohol. The

import of Kriston, the UCBR argues, is that a defendant may not enjoy the amenities of a sentence of house arrest and later seek to use such time to satisfy a specified term of "imprisonment." It submits that such holding does not indicate that house arrest is distinct from incarceration for purposes of eligibility for unemployment compensation benefits -- an issue that Kriston does not in any way address.

Claimant responds that the Commonwealth Court was correct in holding that house arrest does not constitute "incarceration," which would result in automatic disqualification from the receipt of unemployment compensation benefits pursuant to 402.6 of the UC Law. Contrary to the UCBR's contentions, he submits, this holding does not conflict with any existing precedent as there is no case that interprets "incarcerated" in Section 402.6 as encompassing house arrest. The decisions relied upon by the UCBR, Claimant asserts, involve an entirely different statute, the WC Act, which is not at issue here, and cannot create binding precedent in unemployment compensation cases.

To illustrate, Claimant emphasizes that while the UC Law requires the "compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own," 43 P.S. § 752, the purpose of the WC Act is to provide benefits to employees who suffer work-related injuries. He asserts that each statute has different eligibility requirements, and that workers' compensation benefits, unlike unemployment compensation benefits, are based on an employment relationship, an injury that arose in the course of employment, and the employer's surrender of their defenses to civil actions in exchange for the claimant's relinquishment of an action in tort. By contrast, he submits, the UC Law is unconcerned with tort liability or civil causes of action, and is designed as insurance against the burden of indigence resulting from the economic insecurity of involuntary unemployment. Id. Accordingly, Claimant concludes, workers' compensation and unemployment compensation benefits are not so

similar that the Commonwealth Court was bound to follow the workers' compensation cases that interpret the term "incarceration."

Even if this Court were to consider the workers' compensation cases as persuasive, Claimant maintains, the instant facts are clearly distinguishable. First, he argues that Moore (where the Commonwealth Court held expressly that house arrest with work release constitutes "incarceration" under the WC Act's disqualification provision) is distinguishable because the liberty of the individual seeking benefits in that case was much more restricted than the instant case, where Claimant actually worked nine days and was permitted excursions from home with prior approval, such as running errands and going Christmas shopping. Claimant further points out that in Henkels & McCoy Inc., the only authority of this Court relied upon by the UCBR, the claimant was denied workers' compensation benefits because his probationary sentence subjected him to involuntarily commitment to a psychiatric hospital, and, thus, his loss of earnings did not result from injury, but rather from his criminal sentence. Here, Claimant was not institutionalized, but was subject to house arrest, the terms of which did not hamper his ability to work.

Further, Claimant contends, the legislative remarks relied upon by the UCBR do not suggest that "incarceration" in Section 402.6 was intended to include house arrest as they reflected a concern over the receipt of unemployment compensation benefits by incarcerated prisoners on work release. An individual incarcerated in prison, but permitted to leave for designated hours to work, Claimant maintains, is far different from one not in prison at all, but rather confined to his home and permitted to leave for various reasons, including work. He submits there are no legislative comments indicating that Section 402.6 was intended to apply to a claimant on house arrest. Claimant further discounts the UCBR's argument that Section 402.6 was a legislative response to the

Commonwealth Court's holding in Greer (the pre-Section 402.6 case that permitted an incarcerated claimant on work release to obtain unemployment compensation benefits) as the Legislature's adoption of Section 402.6 occurred 18 years after Greer had been decided.

In Claimant's view, the UCBR's interpretation of "incarcerated" would defeat the remedial purpose of the UC Law, which is to provide benefits to those who become unemployed through no fault of their own and who remain realistically attached to the workforce. The UCBR's position, Claimant asserts, further blurs the distinctions in the sentencing alternatives of total confinement, partial confinement and intermediate punishment, which the General Assembly created in Section 9721 of the Sentencing Code, set forth at n.4, supra.

Finally, Claimant argues, the Commonwealth Court was correct in relying on this Court's decision in Kriston, which held that the term "imprisonment" did not include house arrest with electronic monitoring for purposes of determining credit for time served, but rather implies confinement in a correctional or similar rehabilitative institution. He finds our holding in Kriston significant as this Court gave a common sense meaning to a word synonymous to the undefined statutory term at issue herein.[7]

---

[7] In its reply brief, the UCBR argues that Claimant focuses mistakenly on the Section 401(d) standard of whether he was "available for employment," rather than the Section 402.6 standard of whether he was "incarcerated after a conviction." It also clarifies that it is not contending that the workers' compensation cases are binding in this unemployment compensation case, but only that they are persuasive because the disqualification provisions in the WC Act and the UC Law are virtually identical. The UCBR also responds that Claimant's view of the Legislative comments on Section 402.6 is unduly restrictive, and disputes his contention that the concerns were limited only to incarcerated prisoners on work release. It submits there is little distinction between an individual confined in a prison who is eligible for work release and one confined in a home with electronic monitoring who is permitted to leave for work. Finally, the UCBR argues that the general provision declaring the remedial purpose of the UC Law should not govern the specific provision disqualifying incarcerated claimants from receiving benefits.

Because the inquiry before us is exclusively one of statutory interpretation, we begin our analysis by examining the canons of statutory construction.[8]   In interpreting a statute, our primary goal is "to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a).   "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Id. § 1921(b).   We must interpret words in a statute according to their "common and approved usage."   Id. § 1903.   Additionally, we construe every statute "if possible, to give effect to all its provisions."   Id. § 1921(a); see also 1 Pa.C.S. § 1922(2) ("the General Assembly intends the entire statute to be effective and certain").

When the words of a statute are not explicit, we may ascertain the intent of the General Assembly by considering the occasion and necessity for the statute; the circumstances under which it was enacted; the mischief to be remedied; the object to be attained by the legislation; the former law, if any, including other statutes upon the same or similar subjects; the consequences of a particular interpretation; the contemporaneous legislative history of the provision; and the legislative and administrative interpretations of the statute.   Id. § 1921(c).

Keeping in mind these canons, we return to the language of Section 402.6, which, as noted, states:

---

[8] In our review of unemployment compensation cases, we must consider "whether the findings of fact are supported by substantial evidence and whether there was a violation of the constitution or agency procedure or an error of law."   Diehl v. Unemployment Comp. Bd. of Review (ESAB Group, Inc.), 57 A.3d 1209, 1216 (Pa. 2012) (citing Temple University v. Unemployment Comp. Bd. of Review, 772 A.2d 416, 418 n.1 (Pa. 2001)). As with any question of statutory interpretation, our standard of review is de novo, and our scope of review is plenary.   SEIU Healthcare Pa. v. Commonwealth, 104 A.3d 495, 506 (Pa. 2014).

> An employe shall not be eligible for payment of unemployment compensation benefits for any weeks of unemployment during which the employe is incarcerated after a conviction.

43 Pa.C.S. § 802.6.

Upon review of the parties' arguments, we agree with Claimant that his sentence of house arrest following his conviction of driving with a suspended license did not render him "incarcerated" pursuant to Section 402.6, and, therefore, he was not precluded from obtaining unemployment compensation benefits on that ground. Initially, we deem the issue one of first impression as no appellate court decision has examined whether house arrest constitutes incarceration for purposes of Section 402.6 of the UC Law.

Because the term "incarcerated" is not defined in that statute, it must be construed in accordance with its common and ordinary meaning. See 1 Pa.C.S. § 1903(a). It is well-established that the common and approved meaning of a word may be ascertained from an examination of its dictionary definition. See Commonwealth v. Hart, 28 A.3d 898, 909 (Pa. 2011). The common definition of the term "incarcerate" means "[t]o put in into jail," or "[t]o shut in; confine." The American Heritage College Dictionary at 431 (4th Ed. 2004); see also Black's Law Dictionary 760 (defining incarceration as "[i]mprisonment; confinement in a jail or penitentiary"). Because "incarceration" could be commonly understood to mean either imprisonment or the more broad definition of confinement, we conclude that the word is ambiguous, and proceed to ascertain the intent of the General Assembly in enacting Section 402.6. See Henkels & McCoy, Inc., 776 A.2d at 955 (recognizing that the undefined term "incarceration" is commonly defined to include both "imprisonment" and "confinement," and that confinement need not be limited to a jail or penitentiary).

Accepting, for purposes of argument, that an individual could be "incarcerated" in an institution other than a county or state correctional facility, the precise question presented here is whether the legislature intended the automatic disqualification

provision to apply to individuals who, following a conviction, have been sentenced to home confinement with work release. In determining whether the Legislature intended for the disqualification provision in Section 402.6 to extend to home confinement circumstances such as house arrest, we consider first the occasion and necessity for the UC Law and the mischief that Section 402.6 was intended to remedy.

The UC Law was enacted to alleviate the economic insecurity resulting from unemployment, which is a serious menace to the health, morals and welfare of Pennsylvania citizens. 43 P.S. § 752 (Declaration of public policy). The statute requires "the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own." Id. "[T]he provisions of the [UC Law] must be liberally construed to provide the broadest possible benefits to those who experienced forced unemployment." Renne v. Unemployment Comp. Bd. of Review, 453 A.2d 318, 321 n.4 (Pa. 1982).

Prior to the enactment of Section 402.6 in 1996, there was no specific provision in the UC Law disqualifying an incarcerated employee from receiving unemployment compensation benefits. Under these circumstances, eligibility determinations were made by adhering to Section 401(d)'s requirement that the claimant is able and available for suitable work. In Greer v. Unemployment Comp. Bd. of Review, 392 A.2d 918 (Pa. Cmwlth. 1978), a case which predated the adoption of Section 402.6 by eighteen years, the claimant had been receiving unemployment compensation benefits when he was incarcerated for violation of a support order. The sentencing order placed the claimant in the prison work release program and conditioned his release upon his either obtaining employment or paying the support arrearages in full. While the claimant was free to leave prison to go to work, he had to be accompanied by prison officials for purposes of seeking a job.

Both the referee and the UCBR ruled that the claimant was ineligible for benefits under Section 401(d)'s "able and available for suitable work" standard, finding that he was not free to seek employment because he could not leave the prison alone for purposes of obtaining work and, thus, was not realistically attached to the labor force. The Commonwealth Court in Greer reversed, finding that the claimant was receiving benefits at the time of his incarceration, had no restrictions on his availability to work, and made every effort to find a job, but was unsuccessful. It emphasized that the claimant's release from prison was expressly conditioned upon his obtaining employment, and the mere fact that the claimant was required to be accompanied by a prison official when he left the prison to find work did not warrant the denial of benefits. The court explained that each case must be examined on its own facts, as not all prisoners in work release programs would be eligible for unemployment compensation benefits. Accordingly, the status of the law prior to the enactment of Section 402.6 was that an employee incarcerated in prison and on work release could be eligible for unemployment compensation benefits if he was, *inter alia*, able and available for work.

While the General Assembly did not act expeditiously after the Commonwealth Court's 1978 pronouncement in Greer, it ultimately changed the legal landscape by amending the UC Law in 1996 to *per se* disqualify from benefits those claimants who were "incarcerated after a conviction." The proponent of the legislation, Representative William Lloyd, made the following illustrative comment when he offered the amendment for a vote.

> Mr. Speaker, this amendment would put into the Unemployment Compensation Law a prohibition which is similar to one which we inserted into the workers' compensation law in 1993. Specifically, this amendment says that someone who is incarcerated after a conviction does not receive unemployment benefits.

> I learned to my surprise a month or so ago from a business in my district that it is possible now, if you are convicted and you are in prison and you qualify for work release and your employer does not want you back, you then get unemployment compensation. This businessman in my district and the other employees in that company do not think that is right; I do not think that is right either, and I think we ought to change the law.

Statement of Representative William Lloyd, 1996 Pa. Legis. Journal, House, p. 835 (May 13, 1996).

This comment suggests that Section 402.6 was enacted to change the law originally established by the Commonwealth Court's decision in Greer by precluding unemployment compensation benefits to those claimants who are incarcerated in prison and eligible for work release. See Kroh, 711 A.2d at 1096 n.7 (noting that it could be argued that the General Assembly's enactment of Section 402.6 of the UC Law "overruled" judicial decisions such as the Commonwealth Court's decision in Greer, which permitted a claimant incarcerated in prison and participating in the work release program to obtain unemployment compensation benefits).

There is no evidence to suggest that Section 402.6 was intended to disqualify claimants who were not incarcerated in a prison or an alternative institutional setting, but rather were sentenced to the less severe sanction of home confinement. Pennsylvania's criminal justice system is premised upon graduated punishment dependent upon the severity of the crime, and, generally, it is fair to assume that a defendant sentenced to house arrest with work release has committed a less serious offense than an individual incarcerated after a criminal conviction. Absent clear language or legislative intent to disqualify claimants sentenced to home confinement, and considering the remedial purposes underlying the UC Law, we hold that Section 402.6's preclusion of benefits does not apply to claimants on house arrest.[9]

---

[9] As emphasized infra, even if a claimant's criminal sentence does not *per se* disqualify him from benefits under Section 402.6, his sentence may contain restrictions that render (continued…)

We reach this conclusion in light of precedent of this Court acknowledging the stark differences between incarceration and home confinement. As relied upon by Claimant and the Commonwealth Court below, this Court in Kriston, supra, construed the term "imprisonment," which is a synonym and accepted dictionary definition of "incarceration," as used in Section 402.6. The issue in Kriston was whether, for purposes of parole eligibility, a defendant's time spent in an electronic home monitoring program should be credited towards his mandatory minimum sentence for driving under the influence of alcohol (DUI) under former 75 Pa.C.S. § 3731, which had required a minimum term of "imprisonment" of thirty days if the defendant had a prior DUI conviction. Because the term "imprisonment" was not defined in the statute, we looked to its common and ordinary meaning.

Finding that "it would grossly distort the language used by the legislature if we were to conclude that the term 'imprisonment' means merely 'staying at home,'" 588 A.2d at 899, this Court held that "[t]he plain and ordinary meaning of imprisonment is confinement in a correctional or similar rehabilitative *institution*, not staying at home." Id. (emphasis in original). We reasoned that the "qualitative differences" between one confined in an institution and one confined in his home "are too numerous and obvious to require elaboration," id. (footnote omitted), and that the General Assembly would not have intended for the term "imprisonment" to be "so diluted in effect as to encompass home monitoring programs." Id. at 900.

We further cited provisions of the Sentencing Code, which demonstrated a legislative intent that, unlike home confinement, sentences of imprisonment or incarceration are to be served in institutional settings. See e.g. 42 Pa.C.S. § 9755(a)

---

(…continued)
him unable or unavailable to work, thereby precluding him from unemployment compensation benefits under Section 401(d).

(directing that a court imposing a sentence of partial confinement shall specify "whether the confinement shall commence in a correctional or other appropriate institution"); id. § 9755(c) (permitting a court imposing a sentence of partial confinement to grant the privilege of leaving the "institution" for various reasons including employment and education); and id. § 9756(a) (directing a court imposing a sentence of total confinement to specify "whether the sentence shall commence in a correctional or other appropriate institution"). This Court concluded in Kriston that if the General Assembly had intended for one convicted of a second DUI offense to stay at home, it would not have employed the word "'imprisonment,' which, by its plain and ordinary meaning and by legislative references to confinement found in the Sentencing Code, must be taken to mean confinement in an institution." Id., at 900-01.[10]

This Court has also recognized the differences between incarceration and home confinement in subsequent cases. See Commonwealth v. Kyle, 874 A.2d 12, 22 (Pa. 2005) (holding that because of the differences between incarceration and home confinement as set forth in Kriston, a defendant confined to his home is not in "custody," thus, time spent subject to an electronic home monitoring bail program is not time spent in "custody" for purposes of credit under 42 Pa.C.S. § 9760); Commonwealth v. Wegley, 829 A.2d 1148, at 1151-52 n.8 (Pa. 2003) (while concluding that a sentence of home monitoring constituted "official detention" for purposes of the escape statute, the Court nevertheless acknowledged the differences between confinement at home and incarceration, noting that only a person sentenced to home confinement enjoys

---

[10] Although irrelevant to the legal issue presented herein, notwithstanding the Kriston Court's interpretation of "imprisonment," we ultimately granted the defendant in Kriston credit for time served in an electronic home monitoring program on equitable grounds because, prior to entering the program, prison authorities assured him that he would receive credit for such time.

unrestricted freedom of activity, movement, and association, and can eat, sleep, make phone calls, watch television and entertain guests at his leisure). Accordingly, based on the aforementioned precedent, we conclude that house arrest is sufficiently distinguishable from "incarceration" so as to render Section 402.6's ineligibility provision inapplicable here.

The particular cases relied upon by the UCBR, which involve the similarly-phrased disqualification provision for incarcerated employees under the WC Act, do not command a different result. In Henkels & McCoy Inc., supra, this Court examined Section 306(a)(2) of the WC Act, which, at the time stated that "[n]othing in [the WC Act] shall require payment of compensation for any period during which the employe is incarcerated after a conviction." 77 P.S. § 511(2).[11] The issue on appeal was whether the claimant was "incarcerated after a conviction" when he was serving a sentence of probation with the special condition of involuntary commitment to a state psychiatric hospital.

Similar to our analysis in the instant case, we recognized that "incarceration" is commonly defined to include both "imprisonment" and "confinement," and found that such definitions do not limit the confinement to a jail or penitentiary. 776 A.2d at 955. We held that a criminal sentence of involuntary commitment to a psychiatric institution constituted "incarceration" because the claimant remained in the custody of the Commonwealth and because it was the criminal sentence (and not the work injury) that removed the claimant from the work force. We found instructive the decision in Brinker's International Inc., supra (also relied upon by UCBR), where the Commonwealth Court held that "incarceration after a conviction," as set forth in the WC Act's disqualification provision, should not be limited to a claimant incarcerated 100 percent of the time, but

---

[11] This provision was later amended, employing nearly identical language, and now appears at 77 P.S. § 511.1.

also applied where the claimant was in a work release program while incarcerated in a detention and alcohol recovery facility.

Thus, pursuant to Henkels & McCoy, Inc., and Brinker's' International, Inc., one convicted of a crime and sentenced to incarceration in an institution (such as a psychiatric hospital or alcohol rehabilitation facility) is "confined" or "imprisoned" to such an extent so as to be "incarcerated" for purposes of eligibility for workers' compensation benefits. That level of confinement in this unemployment compensation case is absent, where Claimant was not sentenced to incarceration in any type of institution, but rather was confined to a home, a sentencing alternative that we have already concluded is far different from incarceration or confinement in a correctional facility or other institutional setting.

The Commonwealth Court's decision in Moore, while distinguishable on the ground that it was interpreting the WC Act and not the UC Law, is more factually similar to the instant case than Henkels & McCoy, Inc. and Brinker's International, Inc. as it, like the instant case, involved a claimant sentenced to house arrest with work release. In Moore, the claimant's employer unilaterally ceased paying workers' compensation benefits on the ground that the claimant was "incarcerated after a conviction" pursuant to Section 306(a.1) of the WC Act. The claimant sought reinstatement of his workers' compensation benefits, contending that house arrest with work release did not constitute "incarceration."

Claimant was denied reinstatement of benefits, and the Commonwealth Court affirmed based on Henkels & McCoy, Inc. and Brinker's International, Inc. The Commonwealth Court in Moore held that "[l]ike those confined to residential inpatient rehabilitation facilities and psychiatric hospitals, an individual on house arrest is in constructive custody." Id., 811 A.2d at 634. The court emphasized that the claimant's

liberty and movements were significantly limited by security measures and that unauthorized departure from the home may result in criminal sanctions of contempt. Id.

We recognize there are distinctions between the Commonwealth Court's decision in Moore and the instant case, particularly, as noted, that Moore is interpreting the WC Act, and not the UC Law at issue here. Accordingly, we decline to consider the soundness of the Commonwealth Court's decision in Moore until such time as the issue is squarely before us.[12]

In conclusion, we emphasize the same clarification as did the Commonwealth Court at the end of its opinion below, *i.e.*, that we are not holding that all claimants on house arrest are eligible for unemployment compensation benefits. Instead, we merely rule that house arrest does not constitute "incarceration" for purposes of the disqualification provision set forth in Section 402.6 of the UC Law. The Commonwealth Court concluded that Claimant's unrebutted testimony and documentary evidence demonstrated that, under the terms and conditions of Claimant's sentence of house arrest, he was able and available to work, and that he, in fact, worked nine days during the period he served his sentence of house arrest. Thus, Claimant's sentence of house arrest did not prevent him from otherwise satisfying the requisites for obtaining unemployment compensation benefits.

Accordingly, we affirm the order of the Commonwealth Court, which reversed the denial of benefits.

Former Chief Justice Castille did not participate in the decision of this case.

---

[12] The Commonwealth Court below held that Moore was distinguishable because the terms of Claimant's house arrest placed no restrictions on his ability to work and Claimant was not removed from the work force. While we acknowledge that the claimant in Moore was also on house arrest with work release, as noted, we leave for another day the consideration of these arguments in the context of the WC Act.

Mr. Chief Justice Saylor, Mr. Justice Eakin and Madame Justice Todd join the opinion.

Mr. Justice Stevens files a dissenting opinion