**[J-62-2018] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| DANIEL HARMON, | : | No. 37 EAP 2017 |
| | : | |
| Appellant | : | Appeal from the Order of |
| | : | Commonwealth Court entered on 06- |
| | : | 07-2017 at No. 787 CD 2015 affirming |
| v. | : | the decision entered on 4-15-2015 by |
| | : | the Unemployment Compensation |
| | : | Board of Review at No. B-577458. |
| UNEMPLOYMENT COMPENSATION | : | |
| BOARD OF REVIEW, | : | ARGUED: September 25, 2018 |
| | : | |
| Appellee | : | |

## CONCURRING OPINION

**JUSTICE WECHT**                                                   **DECIDED: April 26, 2019**

Section 402.6 of the Unemployment Compensation Law provides that "an employe"[1] cannot receive unemployment benefits for any week "during" which he or she is incarcerated after a conviction. 43 P.S. § 802.6. I agree with the learned Majority that the word "during," as used in that section, is ambiguous. I also agree that, given this ambiguity, we should construe Section 402.6 to mean that claimants serving sentences of weekend-only confinement remain eligible to receive unemployment compensation

---

[1] No, that's not a typo. For reasons I have been unable to discern, the General Assembly frequently uses this curious spelling of "employee" in both the Unemployment Compensation Law, 43 P.S. § 751 *et seq.*, and the Workers' Compensation Act, 77 P.S. § 1 *et seq.* While most of our legal archaicisms are of British derivation, this particular one, oddly enough, seems to be of French origin. *See* BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE (2d ed. 1995) ("Although employé, the French form, might logically be thought to be better as a generic term, employée (which French denotes the feminine gender) is so widespread (without the accent mark) that it is not likely to be uprooted.").

benefits.  I write separately because I disagree respectfully with the Majority's discussion of administrative agency "deference," *see* Maj. Op. at 10-13, and because I believe that the Majority places far too much weight on the legislative "history" of Section 402.6, *see id.* at 18-21.

As I have explained in the past, I do not agree that reviewing courts should afford what often amounts to unqualified deference—*i.e.*, *Chevron*[2] deference—to an executive-branch agency's interpretation of an ambiguous statute.  *See Snyder Bros., Inc. v. Pa. Pub. Util. Comm'n*, 198 A.3d 1056, 1083 (Pa. 2018) (Wecht, J., concurring) ("The General Assembly tells us what a law is.  When that law is less than clear, we must perform our interpretive duty.").  While courts *may* consider (and *might* ultimately be persuaded by) the interpretation offered by an administrative agency charged with administering a particular statute, "the meaning of a statute is essentially a question of law for the court." *Id.* (citing *Phila. Suburban Corp. v. Pa. Bd. of Fin. & Revenue*, 635 A.2d 116, 118 (Pa. 1993)); *see* 1 Pa.C.S. § 1921(c)(8) (explaining that reviewing courts *may* consider administrative interpretations of an ambiguous statute).  Courts should not delegate their interpretative responsibilities to state agencies.

But let me suspend my heresy for a moment and assume, like the Majority, that *Chevron*-style deference should remain an element of Pennsylvania law.  Even under such a deferential rubric, there is little doubt that the Commonwealth Court erred in deferring to the Board's interpretation of Section 402.6 in this case.  That is because,

---

[2]      *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

under the current (albeit evolving)[3] precedent of the United States Supreme Court,[4] deference is warranted only when the legislature "expected the agency to be able to speak with the force of law when it addresses ambiguity in the statute," *United States v. Mead Corp.*, 533 U.S. 218, 229 (2001), and is unwarranted if the legislature has not delegated interpretive authority to the agency.[5] Here, nothing in the Unemployment Compensation Law suggests that the General Assembly used the word "during" in Section 402.6 because it wanted the Board—or even the Department of Labor and Industry—to use its delegated authority to interpret that term. Thus, the Commonwealth Court erred in holding that the Board's preferred definition of the word "during" was entitled to deference unless it is "clearly erroneous." *See Harmon v. Unemployment Comp. Bd.*, 163 A.3d 1057, 1061 (Pa. Cmwlth. 2017).

Turning to a textual analysis of Section 402.6, I agree with the Majority to the extent that it relies upon the purpose of the Unemployment Compensation Law (as described in 43 P.S. § 752) and upon the general principle that ambiguous provisions of that Law should be construed liberally to provide the broadest possible benefits. Maj. Op. at 19-

---

[3] *See*, *e.g.*, *Pereira v. Sessions*, ___ U.S. ___, 138 S.Ct. 2105, 2121 (2018) (Kennedy, J., concurring) ("[I]t seems necessary and appropriate to reconsider, in an appropriate case, the premises that underlie *Chevron* and how courts have implemented that decision."); *SAS Institute, Inc. v. Iancu*, ___ U.S. ___, 138 S.Ct. 1348, 1364 (2018) (Breyer, J., concurring) (explaining that courts should not treat *Chevron* "like a rigid, black-letter rule of law, instructing them always to allow agencies leeway to fill every gap in every statutory provision").

[4] Though not bound by the United States Supreme Court on matters of administrative law, this Court generally has chosen to follow SCOTUS precedents in the area. *NW. Youth Servs., Inc. v. Commonwealth, Dep't of Pub. Welfare*, 66 A.3d 301, 311 (Pa. 2013) ("Pennsylvania courts' treatment of deference to administrative agency rules has followed the United States Supreme Court's lead . . . .").

[5] *See King v. Burwell*, ___ U.S. ___, 135 S.Ct. 2480, 2488 (2015) (explaining that *Chevron* deference "is premised on the theory that a statute's ambiguity constitutes an implicit delegation from Congress to the agency to fill in the statutory gaps" (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000))).

21, 23; *see Chamberlain v. Unemployment Comp. Bd. of Review*, 114 A.3d 385, 395 (Pa. 2015). I agree as well with the Majority's rejection of the Board's surplusage argument. *See* Maj. Op. at 22.

I cannot join the Majority's analysis in full, however, because it relies heavily upon the legislative history of Section 402.6. Or, to be more precise, the Majority relies upon *Chamberlain*, which in turn relied upon the legislative history of Section 402.6. *Id.* at 20-21. Specifically, the Majority quotes a single floor statement delivered by a single legislator (Representative William Lloyd) in connection with his efforts to drum up support for the 1996 amendments to the Unemployment Compensation Law. *See id.* This reliance upon a lawmaker's remarks—whether quoted directly or bootstrapped via the very same quotation in our decision in *Chamberlain*—is unwise. As I have explained in prior cases, I believe that courts should exercise "a healthy caution, skepticism, and discipline" with respect to legislative history, particularly when dealing with floor statements and committee reports, which do not necessarily reflect the collective intent of the entire General Assembly.[6]

Our task here, as the Majority notes, is "to ascertain and effectuate the intent of the General Assembly." Maj. Op. at 18 (quoting 1 Pa.C.S. § 1921(a)). Our goal is not to ascertain and effectuate the intent of Representative William Lloyd. In the vast majority of cases, the exercise of poring over legislative journals for choice nuggets of debate and discourse is unlikely to yield a sound assessment of the General Assembly's intent.[7] It

---

[6] *See Snyder Bros.*, 198 A.3d at 1082 (Wecht, J., concurring) ("As a general matter, I am skeptical about the utility of examining draft bills, committee reports, and floor statements to discern correctly each legislator's own subjective motivations, much less the collective intent of the entire body.").

[7] *See Snyder Bros.*, 198 A.3d at 1083 (Wecht, J., concurring) ("This strikes me as an obvious instance when using legislative history to discern the General Assembly's intent is, to paraphrase the late Judge Harold Leventhal of the United States Court of

seems obvious that a pithy statement uttered by a single member of the Pennsylvania House of Representatives is not a reliable indication of the intent of the entire House. Moreover, it tells us nothing whatsoever about the intent of the Senators who also voted to amend the Unemployment Compensation Law in 1996.

Though I would forego any resort to the legislative history upon which today's Majority relies, I nevertheless concur in the result. The preposition "during," as used in Section 402.6 of the Unemployment Compensation Law, could mean "from the beginning to the end of a particular period" (as in: "You should avoid the expressway during rush hour."). Or it could mean "at a specific point in the course of" (as in: "She visited the Smithsonian during her trip to Washington, D.C."). Given these two competing definitions, the Majority correctly selects the one that comports with the stated purpose of the Unemployment Compensation Law and honors the rule that remedial legislation should be construed liberally. *See Chamberlain*, 114 A.3d at 395; 1 Pa.C.S. § 1928(c).

---

Appeals for the District of Columbia Circuit, 'the equivalent of entering a crowded cocktail party and looking over the heads of the guests for one's friends.' *Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia, J., concurring).").