**[J-83A-B-2024]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| TRICIA MEZZACAPPA, | : | No. 40 MAP 2024 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 1229 |
| | : | CD 2021 dated April 6, 2023, |
| v. | : | Affirming the Order of the |
| | : | Northampton County Court of |
| | : | Common Pleas, Civil Division, at No. |
| NORTHAMPTON COUNTY, | : | C-48-CV-2021-02522 dated October |
| | : | 6, 2021 |
| Appellant | : | |
| | : | SUBMITTED: September 24, 2024 |
| | | |
| TRICIA MEZZACAPPA, | : | No. 41 MAP 2024 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 1312 |
| | : | CD 2021 dated April 6, 2023, |
| v. | : | Affirming the Order of the |
| | : | Northampton County Court of |
| | : | Common Pleas, Civil Division, at No. |
| NORTHAMPTON COUNTY, | : | C-48-CV-2021-01040 dated October |
| | : | 26, 2021 |
| Appellant | : | |
| | : | SUBMITTED: September 24, 2024 |

**OPINION**

**CHIEF JUSTICE TODD**                                      **DECIDED: April 25, 2025**

In these related appeals, we consider, *inter alia*, whether a mug shot is an "identifiable description" under the Criminal History Record Information Act ("CHRIA" or

the "Act"),[1] such that, consistent with the provisions of CHRIA, it may be disseminated to individuals only by a police department. For the reasons that follow, we conclude that a mug shot is an "identifiable description" under CHRIA, and, thus, may be disseminated to individuals only by a police department.

## I. Factual and Procedural History

On November 7, 2020, Appellee Tricia Mezzacappa submitted to Northampton County ("County") a request ("First Request") under the Right-to-Know Law ("RTKL"),[2] seeking the "mug shots"[3] of two individuals allegedly detained at the Northampton County Prison ("Prison"). The County denied the request on December 15, 2020, advising Appellee by e-mail that the mug shots were exempt from disclosure under Section 67.708(b)(16) of the RTKL because they relate to criminal investigations.[4] The County

---

[1] 18 Pa.C.S. §§ 9101-9183. CHRIA was enacted by the General Assembly in 1980 to "control the collection, maintenance, dissemination or receipt of criminal history record information." *King v. Bureau of Prof'l & Occupational Affairs, State Bd. of Barber Examiners*, 195 A.3d 315, 329 (Pa. Cmwlth. 2018). CHRIA applies to "persons within this Commonwealth and to any agency of the Commonwealth or its political subdivisions which collects, maintains, disseminates or receives criminal history record information." 18 Pa.C.S. § 9103.

[2] 65 P.S. §§ 67.101-67.3104. The purpose of the RTKL is to "promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions." *SWB Yankees LLC v. Wintermantel*, 45 A.3d 1029, 1034 (Pa. 2012) (citation omitted). The RTKL requires local and Commonwealth agencies to provide access to "public records" upon request. *See* 65 P.S. §§ 67.302, 67.301. A county is a local agency under the RTKL. *Grine v. County of Centre*, 138 A.3d 88, 94 (Pa. Cmwlth. 2016) (*en banc*) (a county qualifies as a local agency under the RTKL).

[3] A "mug shot" is "[a] photograph of a person's face, esp. one taken after the person has been arrested and booked." Black's Law Dictionary 1218 (12th ed. 1990).

[4] Section 67.708(b)(16) of the RTKL provides that "[a] record of an agency relating to or resulting in a criminal investigation," including records that, if disclosed, would (1) reveal the institution, progress or result of a criminal investigation, except the filing of criminal charge; (2) deprive a person of the right to a fair trial or an impartial adjudication; (3) impair the ability to locate a defendant or codefendant; (4) hinder an agency's ability to secure an arrest, prosecution or conviction; or (5) endanger the life or physical safety of an individual, are exempt from public access. 65 P.S. § 67.708(b)(16)(vi)(A)-(E).

further advised Appellee that the mug shots were exempt from disclosure under the RTKL because they constitute confidential criminal history record information under CHRIA.[5] "Criminal history record information" is defined in CHRIA as: "[i]nformation collected by criminal justice agencies concerning individuals, and arising from the initiation of a criminal proceeding, consisting of identifiable descriptions, dates and notations of arrests, indictments, informations or other formal criminal charges and any dispositions arising therefrom." 18 Pa.C.S. § 9102.

On December 28, 2020, Appellee appealed the denial of her First Request to the Office of Open Records ("OOR"), which directed the County to provide Appellee with the mug shots.

Meanwhile, on the same date that she appealed the denial of her First Request, Appellee filed a second request ("Second Request") under the RTKL, seeking, *inter alia*, the last names of correctional officers who worked on the Prison unit where she was incarcerated between October 13 and October 15, 2020, as well as "all mugshots taken of all inmates at the jail from October 2020 to present, including all inmates released on bail." *See* E-mail from RTK Registrar to Appellee, 2/3/21 (R.R. at 7a).[6]

---

[5] Section 67.305 of the RTKL provides that a record in the possession of a Commonwealth or local agency is presumed to be a public record, unless the record is exempt under Section 67.708, *see supra* note 4; the record is protected by a privilege; or the record is exempt from disclosure under any other Federal or State law or regulation or judicial order or decree. 65 P.S. § 67.305(a); *see also id.* § 67.102 (defining "public record"). As discussed *infra*, the County maintains that the requested mug shots are exempt from disclosure under Section 9121 of CHRIA. The burden of proving that a record is exempt from public access is on the Commonwealth agency or local agency receiving the request, by a preponderance of the evidence. *Id.* § 67.708(a)(1); *Pennsylvania Interscholastic Athletic Ass'n, Inc. v. Campbell*, 310 A.3d 271, 281 (Pa. 2024).

[6] As noted, Appellee filed two separate RTKL requests, both requesting the disclosure of mug shots. The cases have proceeded separately on appeal to the OOR, the Court of Common Pleas, the Commonwealth Court, and, finally, to this Court. As the cases have not been consolidated, the County, as Appellant herein, filed separate Briefs and (continued…)

On February 3, 2021, the County granted in part and denied in part Appellee's Second Request. The County advised Appellee that her request for mug shots was "insufficiently specific and unduly burdensome in the context requested." *Id.* Consistent with its denial of her First Request, the County further informed Appellee that, as the mug shots comprise criminal history record information under CHRIA, in accordance with Section 9121(b) of CHRIA, the mug shots could only be disseminated by the State or local police department.[7]

On February 15, 2021, Appellee appealed the denial of her Second Request to the OOR, challenging the County's refusal to provide the requested mug shots. The County defended its denial of Appellee's request by claiming that it was overbroad, such that the County was unable to make a good faith assessment as to whether the records requested were public records. County's Argument, 3/3/21, at 2 (R.R. at 21a). In support of its position, the County submitted an affidavit from David Penchishen, the Prison warden, who attested that approximately 800 individuals were "booked" during the period in question; that "[m]ost" of those individuals had their mug shots taken; that criminal charges were pending against "[m]any of the[m]"; and that the Prison had no knowledge of the status of each criminal case against the inmates. Affidavit of David Penchishen, 3/3/21, at 1 (R.R. at 29a).

---

Reproduced Records. For simplicity's sake, unless otherwise noted, all references to the "Reproduced Record" are to the reproduced record filed under 40 MAP 2024, which is associated with Appellee's Second Request, identified as RTK-01149.

[7] In 2020, at the time Appellee submitted her requests, Section 9121(b)(1) of CHRIA provided, in relevant part: "(b) Dissemination to noncriminal justice agencies and individuals.--Criminal history record information shall be disseminated by a State or local police department to any individual or noncriminal justice agency only upon request." 18 Pa.C.S. § 9121(b)(1) (effective June 28, 2019 through Feb. 11, 2024). Section 9121(b) of CHRIA was amended effective February 12, 2024, and the amendment replaced the language "by a State or local police department," with "by the Pennsylvania State Police." 18 Pa.C.S. § 9121(b)(1) (effective Feb. 12, 2024).

The County further argued that the mug shots are exempt from disclosure under Section 67.305 of the RTKL because dissemination of the mug shots is prohibited by a state law, namely, CHRIA. Specifically, the County maintained that mug shots constitute "identifiable descriptions," which fall within CHRIA's definition of criminal history record information. County's Argument, 3/3/21, at 3 (R.R. at 22a) (citing 18 Pa.C.S. § 9102). Moreover, the County maintained that, because Appellee is an individual, not a criminal justice agency,[8] the mug shots could be disseminated "**only** by a state or local police department." *Id.* at 4 (R.R. at 23a) (emphasis original).

On March 18, 2021, the OOR issued a Final Determination, directing the County to provide Appellee with the mug shots. As relevant herein, with regard to the County's assertion that Appellee was not entitled to copies of the requested mug shots because they constitute confidential criminal history record information under CHRIA, the OOR reasoned that, although a mug shot "may be the source of criminal [history record] information," the "mug shot alone is not precluded from public release since it does not contain criminal record history information." OOR Final Determination, 3/18/21, at 9 (R.R. at 41a). The OOR noted that numerous state and local correctional systems "utilize inmate locator tools that disseminate mug shots," and "mug shots are routinely disseminated to the press, sometimes as part of a press release." *Id.* The OOR further

---

[8] "Criminal justice agency" includes "[a]ny court . . . with criminal jurisdiction or any other governmental agency, or subunit thereof, created by statute or by the State or Federal constitutions, specifically authorized to perform as its principal function the administration of criminal justice, and which allocates a substantial portion of its annual budget to such function." 18 Pa.C.S. § 9102. Criminal justice agencies include, *inter alia*, organized State and municipal police departments; local detention facilities; county, regional and State correctional facilities; probation agencies; district or prosecuting attorneys; parole boards; and pardon boards. *Id.*

suggested that, if the mug shots contain any criminal history record information, the County can redact that information before disseminating them.  *Id.* at 10 (R.R. at 42a).[9]

The County filed petitions for review in the court of common pleas, challenging the OOR's decisions.[10]  In affirming the OOR's determinations, the trial court concluded, in relevant part, that disclosure of the requested mug shots is not prohibited under CHRIA. Recognizing the lack of case law on the issue, the trial court stated − *erroneously* − that, in *Taha v. Bucks County Pennsylvania*, 172 F. Supp.3d 867 (E.D. Pa. 2016), a district court held that "the disclosure of an individual's criminal history (such as citizenship, incarceration location, sex, birth date, height, weight, and identifying marks)" was permissible.[11]  The trial court opined that the release of a mug shot would be less intrusive

---

[9] The OOR rejected the County's claims that Appellee's request was not sufficiently specific to allow the County to respond, and that many of the mug shots are exempt from disclosure under Section 67.708(b)(16)(i)-(ii) of the RTKL because they are related to criminal investigations; on appeal, the trial court agreed with the OOR's conclusion.

[10] The County filed its petition for review of the OOR's determination regarding Appellee's First Request on February 18, 2021, and it filed its petition for review of the OOR's decision pertaining to Appellee's Second Request on April 15, 2021.  As the County's appeal regarding Appellee's Second Request was assigned to the trial court before its appeal relating to Appellee's First Request, the trial court addressed it first.  Observing that the two mug shots Appellee requested in her First Request were included within her Second Request, and that the legal analysis supporting their dissemination to Appellee was the same, the trial court relied on its opinion affirming the OOR's Final Determination regarding Appellee's Second Request to affirm the OOR's January 27, 2021 Final Determination regarding Appellee's First Request.  Thus, we cite to the trial court's opinion in the County's appeal of Appellee's Second Request.

[11] Contrary to the trial court's statement, the district court in *Taha* held that county officials *violated* CHRIA by publishing Taha's expunged criminal arrest record, which included a color photograph of Taha, his sex, birthdate, height, weight, race, hair color, eye color, citizenship, incarceration location, dates of commitment and release, case number for the crime charged, and a notation indicating the substance of the charge, on a publicly available electronic search tool.  The district court concluded that the available information constituted criminal record history information, the disclosure of which was prohibited by CHRIA.  *Taha*, 172 F. Supp.3d at 871-72.

than the criminal history record information that was made public in *Taha*. Trial Court Opinion, 10/5/21, at 7.

The trial court further credited the OOR's assertion that mug shots may be released by law enforcement to the media, citing 18 Pa.C.S. § 9104(a)(1) (CHRIA shall not apply to "police blotters and press releases that contain criminal history record information and are disseminated contemporaneous with the incident"). Based on the foregoing, the trial court affirmed the OOR's orders directing the County to provide Appellee with the mug shots. Notably, the trial court did not address the County's argument that, under Section 9121(b)(1) of CHRIA, it is prohibited from disseminating the mug shots to Appellee because the County is not a State or local police department.[12]

Thereafter, the County appealed the trial court's decisions to the Commonwealth Court. Relevant to this appeal, the County maintained that it is prohibited from disseminating the mug shots to Appellee under CHRIA.[13] Specifically, the County argued that the term "identifiable descriptions" refers not only to information expressed in words and numbers, but also to visual representations of a person or thing. Indeed, the County contended that the primary purpose of a mug shot is to serve as an identifiable description of an individual. It further noted that a "mug shot" is defined as "any of the photographs taken for police records of the face of a person under arrest," quoting Webster's New World College Dictionary 960 (5th ed. 2014). Thus, the County reasoned that, because

---

[12] The trial court also did not address the propriety of the OOR's determination that the mug shots are not related to criminal investigations and, thus, are not exempt from disclosure under Section 67.708(b)(16)(vi)(A) of the RTKL.

[13] The County reiterated its position that the mug shots are exempt from disclosure under Section 67.708(b)(16)(vi)(A) (exempting from disclosure records that, if disclosed, would "[r]eveal the institution, progress or result of a criminal investigation, except the filing of criminal charges") and Section 67.708(b)(16)(vi)(B) (exempting from disclosure records that would "[d]eprive a person of the right to a fair trial or an impartial adjudication" of the RTKL). *See In the Matter of Tricia Mezzacappa v. Northampton County*, No. 1229 CD 2021, 2023 WL 2800094, at *5 (Pa. Cmwlth. filed Apr. 6, 2023) (quoting County's Brief).

mug shots are "police records," they constitute criminal history record information that is prohibited from dissemination under CHRIA.

The County further averred that the trial court should have considered the burden of complying with Appellee's request in light of other factors, including law enforcement's potential interest in the records; the need for statutory compliance by the County, particularly, its obligations pertaining to criminal history record information under Section 9121(b), as recognized in *Taha*;[14] and the privacy interests of third parties.[15]

The Commonwealth Court, in separate unpublished memorandum opinions, affirmed the trial court's decisions. *Mezzacappa,* 2023 WL 2800094; *In the Matter of Tricia Mezzacappa v. Northampton County*, 1312 C.D. 2021, 2023 WL 2803851 (Pa. Cmwlth. filed Apr. 6, 2023). In so doing, the court first rejected the County's argument that mug shots are exempt from disclosure because they are "identifiable descriptions" under CHRIA. The court acknowledged that the County's suggestion that "identifiable descriptions" refers "not only to information expressed in words and numbers, but to visual representations of a person or thing," might be "a plausible reading of the phrase merely on its own." *Mezzacappa*, 2023 WL 2800094 at *3. However, applying a rule of statutory interpretation referred to as *noscitur a sociis*,[16] which requires that the meaning of a word be interpreted in the context of its surrounding words, the court held that the phrase "identifiable descriptions" refers to "information expressed in words or numbers." *Id.* at *4. Specifically, the court noted that, in "Section [9102's] definition of criminal history

---

[14] The court in *Taha* awarded punitive damages to the plaintiff after finding that the defendant willfully violated CHRIA by posting in an online database the plaintiff's criminal history record information after a court ordered that the plaintiff's criminal record be expunged.

[15] The County abandoned its previous argument that Appellee's requests were not sufficiently specific to enable the County to respond the request.

[16] *Noscitur a sociis* is Latin for "it is known by its associates." Black's Law Dictionary 1271 (12th ed. 2024).

record information, 'identifiable descriptions' is followed by 'dates and notations of arrests, indictments, informations or other formal criminal charges and any dispositions arising therefrom'; that is, several types of records that contain strictly information expressed in words or numbers." *Id.* The court opined: "[h]ad the General Assembly intended the phrase to encompass mug shots or other photographic images, it would have used more precise language to that effect." *Id.*

The Commonwealth Court suggested that its interpretation was "reinforced by the fact that the word 'description' is most often used in reference to written or spoken language," citing Webster's definition of "description" as "the act, process, art, or technique of describing or picturing *in words*" or "a *statement or passage* that describes." *Id.* (quoting Webster's New World College Dictionary (5th ed. 2014)) (emphasis by Commonwealth Court). The court posited that, although "use of the word 'description' to refer to purely visual representations" might be "appropriate in some contexts, [such use] is more arcane and unfamiliar than the definition provided in Webster's." *Id.* Applying the presumption that "statutes employ words in their popular and plain everyday sense," the court concluded that mug shots do not constitute "identifiable descriptions" under CHRIA. *Id.*

Addressing the County's claim that the OOR and the trial court failed to give proper consideration to law enforcement's potential interest in the records, the privacy interests of third parties, and the County's obligation to comply with CHRIA's requirements for disseminating criminal history record information, the Commonwealth Court opined that Section 67.708(b) of the RTKL provides several exceptions that protect law enforcement interests, and that law enforcement's "potential interest" in a record, without more, does not shield it from disclosure. *Id.* at *6. The court likewise found that the RTKL contains exceptions that protect third-party privacy interests, opining that none are applicable to

the instant case. Finally, the court rejected the County's reliance on *Taha*, stating: "[t]he most obvious difference, among many, is that [Appellee] is seeking mug shots only. As [the OOR] observed in its determination, 'the information that was disseminated [in *Taha*] was far more than just a photograph.'" *Id.* at *6 n.16.

The Commonwealth Court additionally noted that, "[e]ven if" it agreed with the County's suggestion that mug shots constitute "identifiable descriptions," CHRIA "would still not prevent the release of the requested records." *Id.* at *4. Specifically, the court held that Section 9121(b) of CHRIA, which, at the time of Appellee's request, provided that "criminal history record information shall be disseminated by a State or local police department to any individual or noncriminal justice agency only upon request," does not prohibit dissemination of the mug shots to Appellee by the County. In support of its determination, the Commonwealth Court relied on the Superior Court's decision in *Commonwealth v. Copeland*, 723 A.2d 1049 (Pa. Super. 1998), wherein a criminal defendant sought from the district attorney criminal history record information concerning the witnesses scheduled to testify against him. The district attorney refused to provide the information, claiming that, pursuant to Section 9121(b), only the police are permitted to disseminate criminal history record information to individuals. In rejecting that position, the Superior Court explained, *inter alia*, that CHRIA

> places an affirmative burden on the Commonwealth's state and local police forces to provide criminal history records upon request. Where a request is made by a noncriminal justice agency or individual, the police are entitled to charge a fee and are required to redact the records pursuant to the statute's provisions. Nowhere does the Act prohibit the district attorney's office from providing criminal history information to a defendant facing trial.

723 A.2d at 1051.

The Commonwealth Court recognized that it was not bound by the Superior Court's decision in *Copeland*, but found it persuasive, opining that the "interpretation proposed by the district attorney in *Copeland*, and by the County in the instant matter, depends on a misreading of the word 'only.'" *Mezzacappa*, 2023 WL 2800094 at *4. The court reasoned:

> Had the legislature intended police departments to be the exclusive disseminators of criminal history record information, "only" would have been placed earlier in the sentence, so as to modify "shall be disseminated" or "State or local police department." Its inclusion in the phrase "only upon request," at the sentence's end, simply reflects a legislative intent to prohibit a police department's release of information that an individual or non-criminal justice agency has not requested.

*Id.*[17]

Judge McCullough dissented, suggesting, *inter alia*, that the majority's interpretation of "identifiable descriptions" was too narrow, and would lead to unreasonable results. *Mezzacappa v. Northampton County*, 2023 WL 2803851 at *2 (McCullough, J., dissenting).[18] In Judge McCullough's view, protecting "a written description of an individual but not his photographic mugshot seems counterintuitive," as an individual "is identifiable by his photograph more easily than by his written description." *Id.* She further submitted that the "inclusion of a photograph within the term description has long been recognized in the law." *Id.* (citing *Ligon v. Allen*, 162 S.W. 536, 538 (Ky. Ct. App. 1914) ("[a] photograph is . . . a pictured description.")).

---

[17] The Commonwealth Court also rejected the County's arguments that the requested records are exempt from disclosure under Sections 67.708(b)(16)(vi)(A) and (B) of the RTKL. *See supra* note 13.

[18] Although the Commonwealth Court majority's lead opinion is set forth in *Mezzacappa*, 2023 WL 2800094, Judge McCullough's dissent refers to her dissent in the companion case at *Mezzacappa*, 2023 WL 2803851.

Judge McCullough also disputed the majority's suggestion that *Taha* is distinguishable because Appellee herein requested only mug shots, whereas the requester in *Taha* sought additional information, insisting that "CHRIA does not only forbid release of identifiable descriptions when it is accompanied by other information. CHRIA's language is plain; the presence of **any** of the enumerated data identifies the material as criminal history record information." *Id.* at *3 (emphasis original).

Additionally, Judge McCullough disagreed with the majority's conclusion that Section 9121(b) of CHRIA does not prohibit the County from disseminating the requested mug shots. Rather, she opined that, pursuant to CHRIA, "**only** criminal justice agencies may request, receive, and disseminate [criminal history record information] under very strict regulations." *Id.* (emphasis original).

Finally, in Judge McCullough's view, even if the majority was correct in holding that the dissemination of the mug shots is not prohibited under the RTKL and CHRIA, the court should have remanded the matter for application of the balancing test espoused by this Court in *Pa. State Educ. Ass'n v. Dep't of Cmty. and Econ. Dev. (OOR)*, 148 A.3d 142 (Pa. 2016), in order to allow affected third parties, particularly those who have been exonerated or who are innocent, an opportunity to establish that their privacy interests "far outweigh the minimal public interest in disclosure of the mugshots." *Mezzacappa,* 2023 WL 2803851, at *4 (McCullough, J., dissenting). She further suggested that no public interest will be served by the dissemination of 800 mug shots, quoting the following reasoning by the Eleventh Circuit Court of Appeals:

> [A] booking photograph is a unique and powerful type of photograph that raises personal privacy interests distinct from normal photographs. A booking photograph is a vivid symbol of criminal accusation, which, when released to the public, intimates, and is often equated with, guilt. Further, a booking photograph captures the subject in the vulnerable and embarrassing moments immediately after being accused,

taken into custody, and deprived of most liberties . . . . [T]he Court cannot identify any particular public interest that would be served by releasing the booking photographs.

*Karantsalis v. United States Dep't of Justice*, 635 F.3d 497, 503-04 (11th Cir. 2011).

We granted the County's two separate petitions for review to determine whether the Commonwealth Court erred in holding that a mug shot is not an "identifiable description" under CHRIA; whether the Commonwealth Court erred in holding that CHRIA does not prohibit the County from disseminating criminal history record information to an individual; and whether the Commonwealth Court should have remanded the matter to the trial court for a balancing of the privacy interests of the subjects of the mug shots and the public interest in their dissemination. *See Mezzacappa v. Northampton County*, Nos. 339-340 MAL 2024 (Pa. June 4, 2024) (order).

## II. Arguments

The County first argues that the Commonwealth Court erred in holding that mug shots do not constitute "identifiable descriptions" under CHRIA. The County observes that, although Section 9104(b) of CHRIA specifically provides that certain records related to criminal investigations shall be considered public records, those records are limited to "[c]ourt dockets, police blotters, and press releases and the information contained therein." County's Brief at 15 (quoting 18 Pa.C.S. § 9104(b)).[19] The County suggests that it is significant that, "[a]lthough the legislature was undoubtedly aware that photographs (like mug shots) are part of the criminal investigation process," it did not include photographs in Section 9104(b)'s list of public records that may be disclosed. *Id.*[20]

---

[19] The County makes similar, if not identical, arguments throughout its briefs at 40 MAP 2024 and 41 MAP 2024. Thus, unless otherwise noted, we will refer to the County's Brief at 40 MAP 2024.

[20] Additionally, Section 9104(a)(1) of CHRIA provides that the Act shall not apply to, *inter alia*, "[o]riginal records of entry compiled chronologically, including, but not limited to, (continued…)

The County further asserts that "[p]hotographs are information," and, more specifically, that "[a] mug shot is information used to identify the individual depicted." *Id.* at 15-16. The County submits that "it would be an absurd and unreasonable result to find that CHRIA prohibits the disclosure of all descriptive information obtained by an agency about an individual except for a photograph, the single most easily identifiable description of the individual." *Id.* at 16 (citing 1 Pa.C.S. § 1922(1) (in construing statutory language, it is presumed that the General Assembly does not intend a result that is absurd or unreasonable)).

Moreover, the County contends that dissemination of the mug shots would violate CHRIA under the reasoning of *Taha*. To the extent the OOR, the trial court, and the Commonwealth Court majority attempted to distinguish the instant case from *Taha* on the basis that *Taha* involved the disclosure of more than just photographs – such as the petitioner's sex, birthdate, height, weight, race, hair color, eye color, citizenship, incarceration location, dates of commitment and release, case number for the crime charged, and a notation indicating the substance of charge − the County insists that the *Taha* court recognized no such distinction, and, in any event, "[t]he release of just the photograph rather than all of the information released in *Taha* is a difference of degree rather than a difference of kind." *Id.* at 17.

The County next contends that, as a non-law enforcement agency, it is expressly prohibited under CHRIA from disseminating the requested mug shots to Appellee. The County highlights that, pursuant to Section 9121(b) of CHRIA, "[s]tate and local police departments are explicitly authorized . . . to disseminate criminal record history

police blotters and press releases that contain criminal history record information and are disseminated contemporaneous with the incident" or "[p]osters, announcements, or lists for identifying or apprehending fugitives or wanted persons." 18 Pa.C.S. § 9104(a)(1), (3).

information to individuals or noncriminal justice agencies," while, under Section 9121(a), "[c]riminal justice agencies other than state or local police are only explicitly authorized to release criminal record history information to other criminal justice agencies or to noncriminal justice agencies that are providing certain services." *Id.* at 20. Thus, according to the County, only a State or local police department is permitted to provide Appellee with the requested mug shots. The County further submits that the Commonwealth Court's reliance on *Copeland* to conclude that CHRIA authorizes criminal justice agencies other than State or local police departments to release criminal history record information to noncriminal justice agencies or individuals was misplaced, as the requester in *Copeland* was a criminal defendant and had a constitutional right to the requested information, independent of CHRIA.

Finally, the County observes that Article I, Section 1 of the Pennsylvania Constitution[21] recognizes an individual's right to privacy, and it argues that this Court has repeatedly held that trial courts, before disseminating certain information, must conduct a balancing test to determine whether the right to privacy outweighs the public's interest in the information. *Id.* at 19 (citing *Pa. State Educ. Ass'n, supra*).[22] Accordingly, the County argues that, at a minimum, the Commonwealth Court should have remanded this case to the trial court for application of the requisite balancing test between the interests

---

[21] Article I, Section 1 provides "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Const. art. I, § 1.

[22] Along these lines, the County reiterates the arguments it made to the Commonwealth Court that the mug shots are exempt from disclosure under Section 67.708 of the RTKL because (1) in certain cases, the disclosure of the mug shot would reveal that the case had progressed beyond the filing of charges, *see* § 67.708(b)(16)(vi)(A), and (2) the release of mug shots to the public might also deprive an individual of a fair trial, because juries are drawn from the general populace, *see* § 67.708(b)(16)(vi)(B). Appellant's Brief at 20. We did not accept review of these issues, and, thus, do not address them.

of Appellee and the public in obtaining copies of the mug shots, and the parties who have a potential privacy interest in the same.[23]

In response, Appellee maintains that the County is not prohibited from disseminating criminal history record information to individuals under Section 9121(b) of CHRIA, and she contends that Section 67.701 of the RTKL requires them to do so. She further argues that the Commonwealth Court correctly determined that mug shots are not "identifiable descriptions" under CHRIA because "such unidentified photographs differ from the type of information expressly protected by CHRIA, which includes 'dates and notations of arrests, indictments, informations or other formal criminal charges and any

---

[23] The County Commissioners Association of Pennsylvania ("CCAP") has filed an *amicus* brief in support of the County. CCAP maintains that, because "a mugshot identifies a person through the use of a picture, mugshots are clearly identifiable descriptions," which the County is prohibited from disseminating pursuant to CHRIA. CCAP Brief at 9. CCAP avers that this "plain language interpretation" is supported by *Taha*, as well as the CHRIA Handbook published by the Office of the Attorney General. *See* https://www.attorneygeneral.gov/wp-content/uploads/2018/01/chria.pdf. It further asserts that, in reaching a contrary holding, the Commonwealth Court disregarded the common and approved usage of the term "identifiable descriptions," and adopted a "hyper-technical" interpretation which produces an absurd result. CCAP Brief at 12.

CCAP additionally submits that the County cannot disseminate the requested mug shots because Section 9111 of CHRIA permits disclosure only at such a time and manner as required by CHRIA, and, at the time Appellee submitted her RTKL request, Section 9121(b) provided for the dissemination of criminal history record information to individuals or noncriminal justice agencies by a State or local police department, not by counties. *Id.* (citing, *inter alia*, CHRIA Handbook at 14 ("Only state or local police departments shall disseminate criminal history record information to noncriminal justice agencies and individuals.")). Regarding the Commonwealth Court's reliance on *Copeland* to conclude that that CHRIA does not prohibit the County from disseminating the mug shots, CCAP contends that this reliance was misplaced, as *Copeland* involved a criminal defendant who had a constitutional right to the requested information. CCAP also observes that, while Section 9121(b) of CHRIA describes the information that state and local police are required to extract prior to disseminating criminal history record information, there are no corresponding rules governing the dissemination of the information by counties, vis-à-vis their correctional facilities, thus leaving counties without guidance and subject to liability for the improper release of information.

dispositions arising therefrom.'" Appellee's Brief at 5 (quoting *Mezzacappa*, 2023 WL 2800094 at *4).

Appellee submits that the legislative history of CHRIA "fully supports the Commonwealth Court's commonsense interpretation," citing the floor remarks of Representative Anthony Scirica, wherein he stated that "criminal history record information" is "rap sheet information, that is, information regarding a person's arrest and disposition, including conviction, sentence, probation, and so forth and so on." *Id.* at 5-6 (citation omitted).[24] Appellee contends that a photo, "without any additional descriptive information," is not an "identifiable description" for the purposes of CHRIA, and she submits that an individual has no reasonable expectation of privacy in his or her mug shot. *Id.* at 12.[25]

Appellee also argues that *Taha* is distinguishable, not only because the information released in that case involved more than just a mug shot, but also because the information

---

[24] The Court in *Taha* rejected this precise argument, stating, "despite the County Defendants' arguments to the contrary, Pennsylvania's chief law enforcement officer has concluded that criminal history record information is not the equivalent of a 'rap sheet.'" *Taha*, 172 F. Supp.3d at 871 (opining that the Pennsylvania Attorney General's interpretation, as contained in the CHRIA Handbook, while not binding on this Court or the Commonwealth Court, is nevertheless entitled to "great weight").

[25] The Pennsylvania NewsMedia Association ("PNA") filed an *amicus* brief in support of Appellee. Therein, PNA adopts the arguments espoused by Appellee, but offers several additional policy arguments. Specifically, PNA asserts: mug shots serve as a record of government detention, and the dissemination of mug shots creates increased public scrutiny of law enforcement's actions, and engages the public in the act of policing; the release of mug shots informs communities by revealing a defendant's "custody, appearance and countenance," and incarceration, PNA Brief at 4; dissemination of mug shots promotes public confidence in the criminal justice system by showing that "even the famous, rich and powerful are subject to the law," *id.* at 5; public access to mug shots fosters a "public catharsis related to crimes by showing punishment," *id.*; mug shots educate the public about dangerous conduct, such as illegal drug use and the toll it takes on the human body; mug shots "benefit public understanding of important historical events," and may ultimately symbolize critical moments in American history, *id.* at 7-8; and mug shots "are often the only images of people in custody that are available to the press." *Id.* at 9.

was publicly available after Taha's record had been fully expunged, and, moreover, that the information was inaccurate. *Id.* at 14-15.

### III. Analysis

In this appeal, we are faced with three discrete issues. First, we must determine whether a mug shot is an identifiable description under CHRIA. If we conclude that a mug shot is an identifiable description under CHRIA, we must determine whether CHRIA prohibits the County from disseminating the mug shots to individuals such as Appellee. Finally, if we conclude that CHRIA does not prohibit the County from disseminating the requested mug shots to Appellee, we must decide whether the Commonwealth Court should have remanded the matter to the trial court for a balancing of the privacy interests of the subjects of the mug shots and Appellee's interest in their disclosure.

We begin with the question of whether a mug shot constitutes an identifiable description, as set forth in CHRIA's definition of criminal history record information. *See* 18 Pa.C.S. § 9102 (defining criminal history record information as "[i]nformation collected by criminal justice agencies concerning individuals, and arising from the initiation of a criminal proceeding, consisting of identifiable descriptions, dates and notations of arrests, indictments, informations or other formal criminal charges and any dispositions arising therefrom"). This is a question of statutory interpretation; accordingly, our standard of review is *de novo*, and our scope of review is plenary. *See Pennsylvania State Police v. Grove*, 161 A.3d 877, 891-92 (Pa. 2017).

It is well-settled that, in construing a statute, our objective is to determine and effectuate the intention of the General Assembly. 1 Pa.C.S. § 1921(a); *Commonwealth v. Gamby,* 283 A.3d 298, 306 (Pa. 2022). The General Assembly's intent "is best expressed through the plain language of the statute." *Id.* Thus, when the words of a

statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b).

If the General Assembly defines words that are used in a statute, those definitions are binding. *PUC v. Andrew Seder/The Times Leader*, 139 A.3d 165, 173 (Pa. 2016). Otherwise, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," although technical words and phrases which have acquired a peculiar and appropriate meaning shall be construed according to such peculiar and appropriate meaning or definition. 1 Pa.C.S. § 1903(a). General words shall be construed to take their meanings and be restricted by preceding particular words. *Id*. § 1903(b).

If, however, the words of a statute are not explicit, or are ambiguous, we may ascertain the intent of the General Assembly by considering the following factors, as set forth in the Statutory Construction Act ("SCA"): (1) the occasion and necessity for the statute; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other statutes upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history; and (8) legislative and administrative interpretations of such statute. *Id.* § 1921(c).

The term "identifiable descriptions" is not defined in CHRIA, or elsewhere. As noted above, based on the fact that, in Section 9102, the term "identifiable descriptions" is followed by "dates and notations of arrests, indictments, informations or other formal criminal charges and any dispositions arising therefrom," which, in the view of the Commonwealth Court, "contain strictly information expressed in words or numbers," the lower court opined that mug shots, which are visual representations, are not "identifiable descriptions." *Mezzacappa*, 2023 WL 2800094 at *4. The Commonwealth Court

explained that its interpretation was "reinforced by the fact that the word 'description' is most often used in reference to written or spoken language," and the presumption that "statutes employ words in their popular and plain everyday sense." *Id.*

Our consideration of the common and approved usage of the phrase "identifiable descriptions" leads us to a different conclusion. Initially, we engage in the approved practice of examining the dictionary definitions of the relevant terms. *See, e.g., Gamby,* 283 A.3d 298, 307-08 (Pa. 2022) (considering dictionary definitions of "intimate" to determine whether non-consensual kissing of a victim's neck constituted indecent assault); *Greenwood Gaming & Entertainment, Inc. v. Commonwealth*, 263 A.3d 611, 620-21 (Pa. 2021) (consulting dictionary definitions to ascertain meaning of phrase "personal property"); *Chamberlain v. Unemployment Compensation Board of Review*, 114 A.3d 385, 394 (Pa. 2015) (determining the meaning of the term "incarcerated" through use of dictionaries); *Bruno v. Erie Insurance Co.*, 106 A.3d 48, 75 (Pa. 2014) (noting that, in determining a term's meaning, it is proper to consult dictionaries).

As our research reveals no dictionary definition of the phrase "identifiable descriptions," we consider the definitions of the individual words. "Identifiable" is defined as something "that can be recognized"[26] or something that is "capable of being identified."[27] Similarly, the term "identify" is defined as "to know and say who someone is or what something is"[28] and "to perceive or state the identity of (someone or something)" or "to ascertain the identity of (someone or something that is unfamiliar or unknown)."[29]

---

[26] https://www.oxfordlearnersdictionaries.com/us/definition/english/identifiable.

[27] https://www.merriam-webster.com/dictionary/identifiable.

[28] https://www.britannica.com/dictionary/identify.

[29] https://www.merriam-webster.com/dictionary/identify.

"Description" is defined as, *inter alia*, "a statement that tells you how something or someone looks, sounds, etc.:  words that describe something or someone;"[30]  "a piece of writing or speech that says what somebody/something is like; the act of writing or saying in words what somebody/something is like;"[31] or "an act of describing *specifically* : discourse intended to give a mental image of something experienced," or "a statement or account giving the characteristics of someone or something : a descriptive statement or account."[32]

As a "description" is, *inter alia*, the act of describing, we also consider the dictionary definitions of the term "describe."   The term "describe" is defined as, *inter alia*, "to tell someone the appearance, sound, smell, events, etc., of (something or someone) : to say what something or someone is like,"[33] "to say what somebody/something is like,"[34]; or to "represent or give an account of in words;" **or** "to represent by a figure, model, or picture."[35]  Additionally, the definition of "describe" provided in Black's Law Dictionary is "[t]o narrate, express, explain, set forth, relate, recount, narrate, depict, delineate, portray; sketch."  Black's Law Dictionary 445 (6th ed. 1990).

As evidenced by the above definitions, although the terms "description" and "describe" often refer to written or spoken accounts of something, the terms have broader meanings.  Indeed, the above definitions allow that one may describe something through use of a picture, or other depiction or portrayal.  Thus, because the phrase "identifiable descriptions" may be commonly understood to mean either a written description, or a

---

[30] https://www.britannica.com/dictionary/description.

[31] https://www.oxford/us/definition/english/description?.q.

[32] https://www.merriam-webster.com/dictionary/description.

[33] https://www.britannica.com/dictionary/describe.

[34] https://www.oxfordlearnersdictionaries.com/us/definition/english/describe?q=describe.

[35] https://www.merriam-webster.com/dictionary/describe.

description comprised of sketches or pictures, we conclude that the phrase "identifiable descriptions" in Section 9102 is ambiguous. *See Chamberlain*, 114 A.3d at 394 (concluding that the term "incarceration" was ambiguous because it could be commonly understood to mean either "imprisonment" or the more broad definition of "confinement"). Accordingly, in order to ascertain the meaning of the phrase "identifiable descriptions," we turn to consideration of the aforementioned factors set forth in Section 1921(c) of the SCA.

Upon review of these factors, we find that four factors in particular − the occasion and necessity for the statute, the mischief to be remedied, the object to be attained, and the consequences of a particular interpretation – lead to a conclusion that mug shots are "identifiable descriptions" within CHRIA's definition of "criminal history record information."

Initially, we observe that, when CHRIA was first enacted, the title described CHRIA as an act

> providing for the protection of individual right to privacy and for the completeness and accuracy of, the control of dissemination of, the establishment of guidelines for the security of, and provision for quality control of criminal history record information; and providing for the right of individuals to inspect, review and challenge the accuracy of such information; and providing penalties for violations of this act.

Act of Nov. 26, 1978 (P.L. 1274, No. 305) (Title), codified by Act of July 16, 1979 (P.L. 116, No. 47). We may consider the title and preamble of a statute when construing a statute, *see* 1 Pa.C.S. § 1924, and the above language reveals that a primary purpose of CHRIA is protecting an individual's right to privacy. *See Taha*, 172 F. Supp.3d at 871 ("In enacting CHRIA, the Pennsylvania legislature sought 'to protect individual privacy and dignity.'").

Indeed, the fact that an individual had his mug shot taken necessarily reveals that he or she had some level of contact or involvement with law enforcement. However, as

this Court recently observed, a mere arrest neither proves nor disproves anything. *See Commonwealth v. Berry*, 323 A.2d 641 (Pa. 2024) (holding that prior arrests are not a relevant sentencing consideration because they shed no reliable light upon criminal propensity, cannot be used as evidence of bad character or for impeachment purposes, and have no probative value for establishing defendant's likelihood of recidivism).

Interpreting the phrase "identifiable descriptions" to include mug shots, and including mug shots within CHRIA's protection on dissemination of criminal history record information, is, thus, consistent both with CHRIA's purpose of protecting an individual's right to privacy in the first instance, and in remedying the mischief, in the form of unjustified prejudice, that would result from disclosure of an individual's mere arrest. Although Appellee suggests that dissemination of mug shots does not violate CHRIA because an individual does not have a legitimate privacy interest in a mere photo of their face "without any additional descriptive information," *see* Appellee's Brief at 12, Appellee fails to acknowledge that her request was not for generic photos, but for mug shots, a very specific type of photo.

Accordingly, we find that the occasion for CHRIA's enactment, the mischief CHRIA is designed to remedy, and the object to be obtained by CHRIA, all support a finding that mug shots constitute "identifiable descriptions" under CHRIA.

As noted above, we also find it helpful to consider the consequences of the Commonwealth Court's holding that mug shots do not constitute "identifiable descriptions" under CHRIA. Here, a familiar phrase comes to mind: "[A] picture is worth a thousand words." This maxim, reportedly coined in the 1920's by advertising executive Frederick R. Barnard, suggests that "it is often easier to show something in a picture than to describe it with words."[36] To construe the term "identifiable descriptions" as including

---

[36] https://www.merriam-webster.com/dictionary/a%20picture%20is%20worth%20a%20thousand%20words

only a written description of an individual, but not a photograph or mug shot of the individual, would mean that the most effective way of identifying someone – through a photograph – would not be protected information, but manifestly less-precise written descriptions would be. The legislature cannot have intended such a result. Indeed, such a construction would, in our view, be absurd and unreasonable, because no matter how detailed a written description of an individual may be, one can hardly dispute that, in almost every case, a photograph is the better means of identification. *See* 1 Pa.C.S. § 1922(1) (in construing statutory language, it is presumed that the General Assembly does not intend a result that is absurd or unreasonable).

Based on our consideration of the occasion and necessity for CHRIA, the mischief CHRIA is intended to remedy, the object to be attained by CHRIA, and the consequences of an alternative interpretation, we conclude that the term "identifiable descriptions" in Section 9102 of CHRIA includes mug shots.

Having concluded that mug shots are identifiable descriptions under CHRIA, we must now consider whether the County is prohibited under Section 9121 of CHRIA from disseminating the mug shots to Appellee. As noted above, the Commonwealth Court opined that, even if mug shots do constitute criminal history record information, CHRIA's restrictions on their dissemination do not apply to the County.

At the time Appellee submitted her RTKL request, Section 9121 provided as follows:

> (a) Dissemination to criminal justice agencies.--Criminal history record information maintained by any criminal justice agency shall be disseminated without charge to any criminal justice agency or to any noncriminal justice agency that is providing a service for which a criminal justice agency is responsible.
>
> (b) Dissemination to noncriminal justice agencies and individuals.--*Criminal history record information shall be disseminated by a State or local police department to any*

*individual or noncriminal justice agency only upon request.*
The following apply:

> (1) A fee may be charged by a State or local police department for each request for criminal history record information by an individual or noncriminal justice agency, except that no fee shall be charged to an individual who makes the request in order to apply to become a volunteer with [certain organizations].

> (2) Except as provided for in subsections (b.1) and (b.2), before a State or local police department disseminates criminal history record information to an individual or noncriminal justice agency, it shall extract from the record the following [specific information].

18 Pa.C.S. § 9121(a), (b)(1), (2) (effective June 28, 2019 through Feb. 11, 2024) (emphasis added). It is undisputed that Appellee is an individual, not a criminal justice agency, and, therefore, that Section 9121(b) applies.

The County interprets Section 9121(b) to mean that the requested mug shots, and criminal history record information generally, may be disseminated to Appellee *only* by a State or local police department. In rejecting this argument, the Commonwealth Court relied on the Superior Court's decision in *Copeland*, and further suggested, relative to the highlighted text above:

> [h]ad the legislature intended police departments to be the exclusive disseminators of criminal history record information, "only" would have been placed earlier in the sentence, so as to modify "shall be disseminated" or "State or local police department." Its inclusion in the phrase "only upon request," at the sentence's end, simply reflects a legislative intent to prohibit a police department's release of information that an individual or non-criminal justice agency has not requested.

*Mezzacappa*, 2023 WL 2800094 at *4. Thus, the Commonwealth Court concluded that "Section 9121(b) does not prohibit the County's dissemination of criminal history record information." *Id.* at *4; *see also id.* at *5 (rejecting premise that "Section 9121(b) implicitly

imposes a blanket prohibition on the release of criminal history record information" by any agency other than State or local police departments).

We reiterate that, in interpreting a statute, our goal to determine and honor the intention of the General Assembly, which is best expressed through the plain language of the statute. 1 Pa.C.S. § 1921(a); *Gamby, supra.* Critically, our rules of statutory construction require that a statute be construed, if possible, to give effect to all its provisions, and so that no part will be "inoperative or superfluous, void or insignificant." *Commonwealth v. Roberts,* 329 A.3d 1129, 1137 (Pa. 2025) (internal quotation marks omitted); 1 Pa.C.S. § 1922(2). The Commonwealth Court's interpretation of Section 9121(b) violates both of these tenets.

An examination of both subsections (a) and (b) of Section 9121 demonstrates that the legislature contemplated two different procedures for the dissemination of criminal history record information, depending on the category of the requester. *See Commonwealth v. Bigelow*, 399 A.2d 392, 395 (Pa. 1979) (when a section of a statute contains a given provision, the omission of such provision from a similar section is significant to show a different intention existed).

Specifically, at the time Appellee filed her requests for mug shots, Section 9121(a), titled "Dissemination to criminal justice agencies," provided that criminal history record information "maintained by any criminal justice agency shall be disseminated without charge to any criminal justice agency or to any noncriminal justice agency that is providing a service for which a criminal justice agency is responsible*.*" 18 Pa.C.S. § 9121(a) (effective June 28, 2019 through Feb. 11, 2024). Notably, subsection (a) does not suggest that information provided to criminal justice agencies, or noncriminal justice agencies providing a service on behalf of a criminal justice agency, must be provided by State or local police; indeed, subsection (a) did not reference the police at all.

Conversely, Section 9121(b), titled "Dissemination to noncriminal justice agencies and individuals" – expressly applicable to Appellee as an individual – specifically provided that criminal history record information "shall be disseminated by a State or local police department." 18 Pa.C.S. 9121(b) (effective June 28, 2019 through Feb. 11, 2024). Moreover, Section 9121(b)(1) provided that "[a] fee may be charged by a State or local police department for each request for criminal history record information by an individual or noncriminal agency," and, as noted above, Section 9121(b)(2) instructed that, "before a State or local police department disseminates criminal history record information to an individual or noncriminal justice agency," it shall extract certain information. It is significant that every provision of Section 9121(b) contemplates that criminal history record information is to be provided to an individual such as Appellee by a police department.

In suggesting that the placement of the word "only" immediately prior to the words "upon request" at the end of Section 9121(b) "simply reflects a legislative intent to prohibit a police department's release of information that an individual or non-criminal justice agency has not requested," and does not require that criminal history record information be disseminated to individuals only by a State or local police department, *Mezzacappa*, 2023 WL 2800094 at *4, the Commonwealth Court disregards the legislature's repeated references to "State or local police department" throughout the entirety of Section 9121(b), and the omission of any similar language in Section 9121(a). In this regard, the court advances an interpretation that fails to recognize the distinct requirements of Section 9121(a) and (b), thereby failing to give effect to the statute as a whole.

Moreover, the Commonwealth Court's suggestion that placement of the word "only" immediately prior to the words "upon request" at the end of Section 9121(b) "simply reflects a legislative intent to prohibit a police department's release of information that an

individual or non-criminal justice agency has not requested," *id*., makes little sense in our view. Indeed, there has been no suggestion that State or local police are *sua sponte* disseminating criminal history record information to individuals or non-criminal justice agencies in the absence of a specific request for such information, or that they have ever done so.[37]

Further, construing the language of Section 9121 as merely prohibiting law enforcement from disseminating criminal history record information that has not been requested implies that any non-law enforcement agency *may* disseminate criminal history record information that has not been requested. Such premise is contrary to the overall purpose, scope, and structure of CHRIA, which is exceedingly broad in its application.

CHRIA applies to "persons within this Commonwealth and to any agency of the Commonwealth or its political subdivisions which collects, maintains, disseminates or receives criminal history record information." *See* 18 Pa.C.S. § 9103. It imposes a duty on criminal justice agencies to "maintain complete and accurate criminal history record information and to report such information at such times and in such manner as required" by the Act. *Id.* § 9111. The Act requires that inaccurate information be corrected within 15 days of its detection, with notification to all recipients of the inaccurate data, *id.* § 9114, and imposes security requirements on agencies which collect, store, or disseminate

---

[37] We also find that the court's reliance on *Copeland* is misplaced. As explained above, the "requester" in *Copeland* was a criminal defendant who sought criminal history record information from the district attorney concerning the witnesses scheduled to testify against him. In holding that the defendant was entitled to the information, the Superior Court in *Copeland* stated, "[n]owhere does [CHRIA] prohibit the district attorney's office from providing criminal history information to a defendant facing trial." *Copeland*, 723 A.2d at 1051. Although the Commonwealth Court quoted this particular language, it omitted from its discussion the *Copeland* court's conclusion that Section 9121 "is wholly inapplicable in the context of discovery in a criminal case," *id.*, as well as its observation that a district attorney's obligations with respect to the dissemination of criminal records to a defendant is governed by *Brady v. Maryland*, 373 U.S. 83 (1963) (prosecution must turn over to a defendant all information in its possession, including exculpatory evidence).

criminal history record information. *Id.* § 9131. CHRIA identifies specific information which must be extracted from a record before it is released to individuals or noncriminal justice agencies, *id.* § 9121(b)(2), and it also provides procedures for expungement of criminal history record information. *Id.* § 9122. Finally, CHRIA provides for sanctions against "[a]ny person, including any agency or organization" who violates its provisions. *Id.* § 9181. Given this comprehensive and detailed scheme, we cannot accept the Commonwealth Court's conclusion, based solely on the placement of the word "only," that Section 9121's restrictions on the dissemination of criminal history record information do not apply to prohibit the County from releasing the information.

We additionally note that the Pennsylvania Attorney General ("OAG") has the power and authority to establish rules and regulations for criminal history record information with respect to security, completeness, accuracy, individual access and review, quality control, and audits of repositories. *See id.* § 9161. While not binding, we may consider the OAG's interpretation of the language of Section 9121(b). *See* 1 Pa.C.S. § 1921(c)(8) (interpretations of statutory language by the administrative agency tasked with its implementation may be considered in construing its meaning).

The OAG's CHRIA HANDBOOK, available online at https://www.attorneygeneral.gov/wp-content/uploads/2018/01/chria.pdf, provides:

> *Only state or local police departments shall disseminate criminal history record information to noncriminal justice agencies and individuals.* This shall be done only upon request. These agencies may charge a fee for each request. . . . Before the state and local police departments disseminate criminal history record information to noncriminal justice agencies and individuals, it shall extract from the record all notations of arrest, indictments, or other information relating to the initiation of criminal proceedings when three (3) years have elapsed from the date of arrest, no conviction has occurred, and no proceedings are pending seeking a conviction.

Chapter IV, § 4.1 (emphasis added). The OAG's interpretation bolsters our conclusion that the County, as a non-law enforcement agency, is prohibited under CHRIA from disseminating the requested mug shots to Appellee.

Finally, we note that the legislature's recent amendments to Section 9121 are consistent with our interpretation. As noted above, at the time Appellee filed her RTKL request for mug shots, Section 9121(b) of CHRIA provided: **"(b) Dissemination to noncriminal justice agencies and individuals.--**Criminal history record information shall be disseminated by a State or local police department to any individual or noncriminal justice agency only upon request." 18 Pa.C.S. § 9121(b) (effective June 28, 2019 through Feb. 11, 2024).

In 2024, Section 9121(b) was amended to read as follows:

> **(b) Dissemination to noncriminal justice agencies and individuals.--**Criminal history record information shall be disseminated by the Pennsylvania State Police to any individual or noncriminal justice agency only upon request. Other criminal justice agencies may disseminate criminal history record information to any individual or noncriminal justice agency *only as they deem necessary to carry out their law enforcement functions as otherwise allowed by this chapter.*

18 Pa.C.S. § 9121(b) (effective Feb. 12, 2024 through present) (emphasis added).

Thus, the amendment did two things. First, it replaced the phrase "shall be disseminated by a State or local police department" to "shall be disseminated by the Pennsylvania State Police," eliminating the authority of local police departments to disseminate criminal history record information to individuals. Second, the legislature added to Section 9121(b) language that specifically provides that criminal history record information may be disseminated to individuals by other criminal justice agencies – in

other words, by entities other than the Pennsylvania State Police − only as they deem necessary to carry out their law enforcement functions.[38]

In sum, we conclude that mug shots constitute "identifiable descriptions" as contemplated in CHRIA's definition of "Criminal history record information," 18 Pa.C.S. § 9102. We further conclude that, pursuant to Section 9121(b), criminal history record information may only be disseminated to noncriminal justice agencies and individuals by a police department, and, thus, that the County, as a non-law enforcement agency, is prohibited from releasing the mug shots requested by Appellee. Accordingly, we reverse the decisions of the Commonwealth Court.[39]

Justices Donohue, Dougherty, Wecht, Mundy, Brobson and McCaffery join the opinion.

---

[38] Of course, no party suggests that the County was authorized to disseminate the mug shots to Appellee for the purpose of carrying out the law enforcement functions of the police.

[39] In light of our determination, we find it unnecessary to address whether the Commonwealth Court should have remanded the matter to the trial court for a balancing of the privacy interests of the subjects of the mug shots and Appellee's interest in their disclosure.